NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

US LBM OPERATING CO. 2009, LLC, AS SUCCESSOR IN INTEREST TO DIRECT CABINET SALES – US LBM, LLC, and NEW DIRECT CABINETS, LLC d/b/a DIRECT CABINET SALES,

    Plaintiffs,

v.

ONE SOURCE KITCHEN AND BATH, INC., *et al.*,

    Defendants.

Case No. 23cv2487 (EP) (JSA)

OPINION

**PADIN, District Judge.**

This is a trade secret, restrictive covenant, and unfair competition case. Plaintiffs US LBM Operating Company ("LBM") and New Direct Cabinets, LLC ("New Direct Cabinets") allege that Defendants Joe DeMussi and Antonio Koutsoubos, both former employees, schemed to steal Direct Cabinet Sales, Inc.'s ("Direct Cabinet Sales") trade secrets and employees, including Defendants Allen Ayerov and Sarah Santos, for the benefit of their new company, One Source Kitchen and Bath, Inc. ("One Source"). D.E. 1 ("Compl." or "Complaint"). Plaintiffs seek a preliminary injunction and expedited discovery. D.E.s 2, 3. The Court has reviewed the parties' briefs and decides the motions on the papers. *See* Fed. R. Civ. P. 78(b); L.Civ.R. 78(b). For the reasons below, the Court will **DENY** both motions.

**I.    BACKGROUND[1]**

The parties agree on the following facts.

---

[1] This section derives mainly from the Complaint and the parties' briefings.

DeMussi founded and was the principal of Direct Cabinet Sales, which specialized in the design, manufacturing, sale, and installation of cabinets and related items. Compl. ¶ 20. On April 17, 2015, DeMussi (1) sold Direct Cabinet Sales to LBM through an asset purchase agreement ("Purchase Agreement") and (2) executed an employment agreement with LBM ("Employment Agreement") where DeMussi would be the President of Direct Cabinet Sales (collectively, "Agreements"). *Id.* ¶¶ 21, 28. The Agreements contained non-competition, non-solicitation, and confidentiality provisions.[2] *Id.* ¶¶ 37-39, 41-43.

One Source was incorporated in Florida on October 8, 2021, and engages in the same business as Direct Cabinet Sales. *Id.* ¶¶ 46-47. On October 15, 2021, DeMussi resigned from Direct Cabinet Sales. *Id.* ¶ 44. Effective February 1, 2023, Direct Cabinet Sales was purchased by what is now New Direct Cabinets. *Id.* ¶ 92.

The parties' disputed facts follow.

**A. Plaintiffs' Version**

One Source, from its inception, was a scheme to steal Direct Cabinet Sales' trade secrets, employees, and clients. *Id.* ¶¶ 51-55. This scheme was spearheaded by DeMussi, who recruited Koutsoubos, a long-term employee of Direct Cabinet Sales. *Id.* ¶¶ 50, 54-55. Together, DeMussi and Koutsoubos successfully solicited two Direct Cabinet Sales employees, Ayerov and Santos, to misappropriate Direct Cabinet Sales' trade secrets for One Source's benefit, including customer information, pricing, design specifications, and installation specifications. *Id.* ¶¶ 58-76, 88. Since approximately January or February 2022, other Direct Cabinet Sales employees have been solicited to quit and work at One Source, with some employees working for One Source prior to resigning from Direct Cabinet Sales. *Id.* ¶ 88.

---

[2] The duration of the prohibitory periods varied.

However, DeMussi and Koutsoubos repeatedly and unsuccessfully attempted to solicit Seth Teitelbaum, a long-time Direct Cabinet Sales employee who worked with DeMussi and Koutsoubos for several years.  *See id.* ¶¶ 77, 79.  Specifically, in the spring, summer,[3] and fall of 2022, the three men, at DeMussi and Koutsoubos' invitation, attended three in-person meetings where DeMussi and Koutsoubos asked Teitelbaum to join One Source; Teitelbaum continuously refused.  *Id.* ¶¶ 83-86.  DeMussi and Koutsoubos stopped "trying to entice" Teitelbaum in December 2022.  *Id.* ¶ 87.

### B. Defendants' Version

From mid-2021 through 2022, Direct Cabinet Sales has been "failing" and losing clients, projects, and employees as a result.  D.E. 21 ("Opp'n" or "Opposition")[4] at 2.  Specifically, it was losing money on and turning down projects, withholding payments to vendors, and shutting down showrooms in multiple cities.  *See id.* at 2-3.  Consequently, concerned employees sought escape routes.  For example, Koutsoubos, not DeMussi, founded One Source due to his concerns.  *Id.* at 5.  Likewise, Ayerov pursued other employment after Direct Cabinet Sales' actions cost him his commission and threatened his future success at the company.  *Id.* at 10-11.  Only on two occasions did Ayerov and DeMussi meet, both after DeMussi's prohibitory period terminated: (1) in October 2022 to fish while Ayerov was vacationing near DeMussi and (2) in January 2023 to travel with Koutsoubos to the three men's long-running, annual fishing trip in Costa Rica.  *Id.* at 6.  Relatedly, it was Teitelbaum who contacted DeMussi and Koutsoubos for employment, and DeMussi and

---

[3] At this second meeting, "DeMussi admitted that he was involved in the formation of One Source since [its] inception" and that "Koutsoubos was the face of the organization" due to DeMussi's non-compete obligations.  Compl. ¶ 84

[4] The Opposition facts are based primarily on Defendants' certifications.  *See* D.E.s 21-1 (DeMussi), 21-2 (Koutsoubos), 21-3 (Ayerov), 21-4 (Santos).

3

Koutsoubos advised that no further discussions could occur until after the applicable prohibitory periods. *Id.* at 5-6.

Further, DeMussi and Koutsoubos never directed other Defendants to share any confidential information or trade secrets. *Id.* at 10. Nor are the alleged "trade secrets" "secret"; rather, "all operators in the high-density cabinet industry employed the very same business processes/means and methods" as Direct Cabinet Sales. *Id.* Lastly, no allegedly stolen projects were stolen, in part because Direct Cabinet Sales had previously rejected these projects. *Id.* at 12-13.

### C. Procedural History

Plaintiffs bring seven counts under federal and New Jersey law. Compl. ¶¶ 109-154. These counts share a common core of allegations, namely that (1) DeMussi was subject to and violated non-solicitation, non-competition, and confidentiality provisions; (2) DeMussi and Koutsoubos founded One Source as a scheme to steal Direct Cabinet Sales' trade secrets, confidential information, employees, and clients; (3) DeMussi and Koutsoubos solicited multiple Direct Cabinet Sales employees to join One Source; and (4) DeMussi and Koutsoubos directed those employees to divulge Direct Cabinet Sales' trade secrets and confidential information for One Source's benefit. *Id.* ¶¶ 117-120, 125, 129-30, 133-37, 142-46, 149, 153. Plaintiffs' seven counts are:

> (1) misappropriation of trade secrets in violation of 18 U.S.C. § 1836 and N.J.S.A. §§ 56:15-3, -4, -6 against all Defendants;
> (2) violation of the Federal Wiretap Act, 18 U.S.C. §§ 2511, 2520, against all Defendants;
> (3) breach of contract against DeMussi;
> (4) breach of the duty of loyalty against DeMussi, Koutsoubos, Ayerov, and Santos;
> (5) tortious interference against all Defendants;
> (6) civil conspiracy against all Defendants;

4

>   (7) alternative New Jersey common law claims of misappropriation, unjust enrichment, and unfair competition against all Defendants.

Based on these counts, Plaintiffs have moved for a preliminary injunction, which seeks to

>   (1) enjoin Defendants from accessing, using or otherwise using for its benefit any of Plaintiff[s'] confidential, proprietary, and trade secret protected information;
>   (2) identify the individuals and entities to whom Plaintiffs' information has been misappropriated, disseminated or disclosed;
>   (3) return to Direct Cabinet Sales any ill-gotten confidential, proprietary, and trade secret protected information;
>   (4) enjoin Defendant DeMussi from directly or indirectly owning any interest in, managing, controlling, participating in . . . , consulting with, [or] rendering services for a competing business of Direct Cabinet Sales for a period of one year[;] and
>   (5) enjoin Defendant DeMussi from any further solicitation of any of Direct Cabinet Sales' employees.

D.E. 2-1 ("Prelim. Inj. Mot." or "Preliminary Injunction Motion") at 1-2. Plaintiffs also seek expedited discovery. D.E. 3 ("Expedited Disc. Mot." or "Expedited Discovery Motion"). Defendants oppose the Preliminary Injunction Motion, and Plaintiffs reply. *See* Opp'n & D.E. 26 ("Reply"). Defendants have not opposed the Expedited Discovery Motion.

## II.   LEGAL STANDARDS

"Preliminary injunctive relief is an 'extraordinary remedy, which should be granted only in limited circumstances.'" *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (quoting *Novartis Consumer Health, Inc. v. Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002)). The primary purpose of preliminary injunctive relief is "maintenance of the status quo until a decision on the merits of a case is rendered." *Acierno v. New Castle Cnty.*, 40 F.3d 645, 647 (3d Cir. 1994). To obtain a temporary restraining order or preliminary injunction, the moving party must show:

>   "(1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured . . . if relief is not granted .

5

> . . . [In addition,] the district court, in considering whether to grant a preliminary injunction, should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest."

*Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017) (quoting *Del. River Port Auth. v. Transam. Trailer Transp., Inc.*, 501 F.2d 917, 919-20 (3d Cir. 1974)).

The movant bears the burden of establishing the first two factors, which are considered the "'most critical'" factors. *Reilly*, 858 F.3d at 179 (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). "If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.* A court may issue an injunction to a plaintiff "only if the plaintiff produces evidence sufficient to convince the district court that all four factors favor preliminary relief." *AT&T v. Winback & Conserve Program*, 42 F.3d 1421, 1427 (3d Cir. 1994); *see also P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005) ("The burden lies with the plaintiff to establish every element in its favor, or the grant of a preliminary injunction is inappropriate.").

Importantly, a preliminary injunction should not be issued where material issues of fact are in dispute. *See, e.g.*, *Vita-Pure, Inc. v. Bhatia*, 2015 WL 1496396, at *3 (D.N.J. Apr. 1, 2015) (denying injunction where factual disputes "preclude a determination that [the p]laintiffs have established a likelihood of success on the merits"); *Collick v. Weeks Marine, Inc.*, 397 Fed. App'x 762, 764 (3d Cir. 2010) (preliminary injunction is inappropriate where there is an "abundance of contradictory facts on both sides of the record").

6

III.     ANALYSIS

    A. **The Preliminary Injunction Motion Will be Denied**

    *1. Plaintiffs' failure to demonstrate a likelihood of success on the merits*

The first prong of the preliminary injunction inquiry requires the movant to demonstrate a likelihood of success on the merits of the action. *Am. Express Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012). A movant need only demonstrate a reasonable chance of success that is "significantly better than negligible but not necessarily more likely than not." *Reilly*, 858 F.3d at 179. Because Plaintiffs fail to satisfy this "gateway" prong, the Court will deny the Preliminary Injunction Motion. *See id.* (noting a movant must establish this prong before injunctive relief can be granted).

    *a. Plaintiffs fail to adequately identify the allegedly misappropriated trade secrets*

The Defend Trade Secrets Act ("DTSA") and New Jersey Trade Secrets Act ("NJTA") permit a misappropriated trade secret's owner to bring a civil action and seek injunctive relief. *See Par Pharm., Inc. v. QuVa Pharma, Inc.*, 2018 WL 1374023, at *6 (D.N.J. Mar. 16, 2018). A plaintiff will succeed by showing that (1) it possessed a trade secret and (2) a defendant used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means. *Id.*

A court cannot analyze the likelihood of a plaintiff's success on the merits of a trade secret claim if a plaintiff provides only "a list of general categories of business and technical information" that "could be used to describe documents found in any number of corporations." *Mallet & Co. v. Lacayo*, 16 F.4th 364, 382 (3d Cir. 2021). plaintiff must describe, with sufficient particularity, "the subject matter of the trade secret . . . to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade . . . ." *Id.* (cleaned up);

7

*see also Oakwood Labs., LLC v. Thanoo*, 2017 WL 5762393, at *5 (D.N.J. Nov. 28, 2017) (finding the plaintiff did not sufficiently plead a trade secret because the plaintiff "never identifie[d] or point[ed] to a specific action, process, or formula that is the subject of th[e] action"). Because Plaintiffs here fail to adequately identify the allegedly misappropriated trade secrets, the Court cannot engage in the first prong of the preliminary injunction analysis—and thus cannot find this prong satisfied—as to Plaintiffs' trade secrets claims.

Plaintiffs allege that "the information stolen by Defendants are trade secrets" because the information "included customer information, pricing, design specifications, [and] installation specifications, . . . that belonged to Direct Cabinet Sales[,]" which New Jersey courts have held "'*may* constitute a trade secret . . . .'" Prelim. Inj. Mot. at 21 (emphasis added) (quoting *Howmedica Osteonics Corp. v. Howard*, 2022 WL 16362464, at *17 (D.N.J. Oct. 28, 2022)). Plaintiffs also seem to suggest that the allegedly stolen information are trade secrets because Direct Cabinet Sales' employee handbook defines them as such. *See id.* at 15; D.E. 3 (copy of the employee handbook). This is insufficient.

While the categories listed by Plaintiffs "may very well include trade secrets," there is also "a fair probability that many of the categories . . . also include information that does not qualify for trade secret protection." *Mallet*, 16 F.4th at 382. Though the Court "recognize[s] the difficulty inherent" in revealing details about allegedly secret information, Plaintiffs still must articulate more specific examples. *Id.* at 384; *see also id.* at 385 (cleaned up) (reversing the lower court's grant of injunctive relief where the plaintiff failed to provide "[s]pecific examples" to support its "assertion that pricing information, strategies, and marketing information" are trade secrets); *Oakwood Labs.*, 2017 WL 5762393, at *4 (finding trade secrets insufficiently pleaded where no specific "action, process, or formula" was identified). Plaintiffs do not. Nor can the employee

8

handbook transform information into a trade secret. *See, e.g.*, *Elsevier Inc. v. Doctor Evidence, LLC*, 2018 WL 557906, at *5 (S.D.N.Y. Jan. 23, 2018) ("For good reason, the law requires that before information or processes may be accorded trade secret status, it must be shown that it is truly a trade secret—a standard far greater than the standard for confidentiality of business information.").

Because Plaintiffs' failure to adequately identify the allegedly misappropriated trade secrets prevents the Court from engaging in the first prong of the preliminary injunction analysis as to Plaintiffs' trade secrets claims, these claims do not warrant injunctive relief.[5]

> b. *The parties' material factual disputes prevent a finding of a likelihood of success on the merits*

A movant fails to demonstrate a likelihood of success on the merits when there are material factual disputes. *Vita-Pure*, 2015 WL 1496396, at *3. A factual dispute is material if its resolution will "have a direct bearing on the viability" of a plaintiff's claims. *Am. Halal Live Poultry, LLC v. City of Perth Amboy*, 2016 WL 2625027, at *3 (D.N.J. May 9, 2016).

Plaintiffs concede that Defendants' opposition "leave[s] unresolved relevant factual issues" and argues the Court should order expedited discovery and hold an evidentiary hearing prior to ruling on the motion. Prelim. Inj. Mot. at 4-5. The Court agrees that the parties' briefing highlights numerous disputed factual issues material to Plaintiffs' claims,[6] including (1) whether

---

[5] *See* Count One (Violation of DTSA and NJTA). Plaintiffs' other claims also rely on allegations that the information constitutes trade secrets. *See* Counts Two (Federal Wiretap Act), Four (Breach of the Duty of Loyalty), Five (Tortious Interference), Six (Civil Conspiracy), and Seven (New Jersey common law claims of Misappropriation, Unjust Enrichment, and Unfair Competition).

[6] Specifically, Counts Three (Breach of Contract), Five (Tortious Interference), Six (Civil Conspiracy), and Seven (New Jersey common law claims of Misappropriation, Unjust Enrichment, and Unfair Competition).

DeMussi breached his non-competition obligations[7] and (2) whether DeMussi and Koutsoubos solicited employees and/or clients.[8]  However, an evidentiary hearing is not proper at this time; as later discussed, the Court finds expedited discovery is not warranted, and Plaintiffs acknowledge that discovery is needed before the Court can resolve these disputes and/or make credibility determinations.  *See* Prelim. Inj. Mot. at 4-5.

    2.  *Plaintiffs' failure to demonstrate immediate irreparable harm*

Though Plaintiffs' failure to satisfy the first prong warrants denial, for completeness, the Court also finds that Plaintiffs fail to satisfy the second prong on similar grounds.  The second prong of the preliminary injunction inquiry requires the movant to demonstrate immediate irreparable injury absent injunctive relief.  *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987).  Irreparable harm cannot be presumed and must be established "independent of any showing of likelihood of success . . . ."  *King Pharms., Inc. v. Sandoz, Inc.*, 2010 WL 1957640, at *5 (D.N.J. May 17, 2010) (citing *Winter v. NRDC, Inc.*, 555 U.S. 7, 21-22 (2008)).

Plaintiffs argue that denial of the Preliminary Injunction Motion will result in irreparable harm because Defendants will "continue to usurp and misappropriate Direct Cabinet Sales' trade secrets . . . ."  Prelim. Inj. Mot. at 37.[9]  It is true that misappropriation of trade secrets may cause irreparable harm.  *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 92 (3d Cir. 1992).  However,

---

[7] *Compare* Compl. ¶¶ 51-55 (alleging DeMussi established One Source and recruited Koutsoubos to join his scheme to unfairly compete with Direct Cabinet Sales) *with* Opp'n at 2-3, 5 (alleging DeMussi engaged in no cabinet-industry activity during the prohibitory period and Koutsoubos, not DeMussi, established One Source out of concerns for his career).

[8] *Compare* Compl. ¶¶ 51-55 (alleging One Source began as a scheme to, in part, poach Direct Cabinet Sales' employees and clients) and ¶¶ 58-79, 88 (alleging One Source solicited Ayerov, Santos, Teitelbaum, and other Direct Cabinet Sales employees) *with* Opp'n at 5-6 (alleging these employees pursued other employment out of concerns for their careers) and 11-13 (detailing the allegedly stolen projects and why they were not stolen).

[9] Plaintiffs limit their discussion of a risk of immediate irreparable harm to dissemination of Plaintiffs' trade secrets.  *See* Prelim. Inj. Mot. at 33.

10

for the reasons noted above,[10] Plaintiffs have failed to adequately identify the allegedly misappropriated trade secrets. Because of this failure, it is unclear whether the trade secrets are secret and thus unclear what harm their dissemination may cause. *See id.* (finding that further disclosure of information already known cannot establish immediate irreparable harm).

Plaintiffs' failure to satisfy the second prong of the preliminary injunction inquiry provides an additional basis for the Court to deny the Preliminary Injunction Motion.

### B. The Expedited Discovery Motion Will be Denied on Similar Grounds

Fed. R. Civ. P. 26(d)(1) empowers the Court to order discovery to begin prior to the parties conferring, as required by Fed. R. Civ. P. 26(f), in cases "such as those involving requests for a preliminary injunction," *i.e.*, before the normal inception of discovery. Fed. R. Civ. P. 26(d)(1), Advisory Committee Note (1993). The party seeking expedited discovery must demonstrate

> (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted.

*Gucci Am., Inc. v. Daffy's, Inc.*, 2000 WL 1720738, at *6 (D.N.J. Nov. 14, 2000).

Because, for the reasons articulated above,[11] Plaintiffs have not demonstrated a risk of irreparable injury or a probability of success on the merits, the Court will also deny the Expedited Discovery Motion.

---

[10] *See supra* at 7-9.
[11] *See supra* Section III.A.

IV.     CONCLUSION

For the reasons stated above, the Court will **DENY** Plaintiffs' Preliminary Injunction and Expedited Discovery Motions.  D.E.s 2, 3.  An appropriate Order accompanies this Opinion.


Dated: December 5, 2023

_____
Evelyn Padin, U.S.D.J.